UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                      Case No. 10-cr-134-pp

TODD DIMOFF,

        Defendant.

---

**ORDER DENYING DEFENDANT'S LETTER MOTION FOR MODIFICATION OF RESTITUTION (DKT. NO. 99)**

---

      On July 13, 2010, the grand jury indicted the defendant and three others on charges of conspiracy to commit mail fraud. Dkt. No. 1. On November 1, 2011, the defendant signed a plea agreement admitting the second charge of mail fraud. Dkt. No. 35. The defendant agreed to pay the restitution ordered by the court and acknowledged his understanding that restitution was mandatory. Id. at ¶27. Judge Charles N. Clevert, Jr. accepted the defendant's guilty plea on November 24, 2010. Dkt. No. 37.

      On March 25, 2011, Judge Clevert sentenced the defendant; as part of that sentence, he ordered the defendant to pay $227,153 in restitution, subject to any modifications the parties requested within forty-five days of the date of judgment. Dkt. Nos. 51, 52 at 5. On June 24, 2011, the defendant filed a motion to modify the restitution. Dkt. No. 61. He argued that the $227,153 amount reflected the total "economic harm of the scheme to defraud," but that did not knowingly join the scheme until "well after it began" and only in relation to one car dealership. Id. at 1. He asserted that the harm foreseeable to

1

him was only $39,984. Id. at 1-2. The government agreed. Dkt. No. 70. Accordingly, on July 22, 2011, Judge Clevert issued an amended judgment reflecting that the defendant owed $39,984 in restitution. Dkt. No. 74.

On March 19, 2021, the court received a letter from the defendant. Dkt. No. 99. It states, "I am seeking a Modification of Restitution. I have attached a settlement agreement between Acuity, A Mutual Insurance Company and myself. I have been working very hard over the past ten years to pay off the restitution. My goal moving forward is to work on a pardon." Id.

The defendant attached to his letter a "General Release of Claims" between himself and Acuity, in which Acuity agreed to release the defendant from claims in exchange for a lump sum payment of $6,500. Id. at 2.

The government filed a response, explaining that Judge Clevert had ordered the defendant to pay the restitution jointly and severally with his co-defendant, Reza Dembowski. Dkt. No. 100 at 1. The restitution was due Don Jacobs Toyota ($1,298) and Acuity Insurance ($38,686). Id. So, as the government noted, the defendant's letter amounted to a motion asking the court to deem satisfied his restitution debt to Acuity. Id. The government stated that it had learned from the Clerk of Court that the defendant had "most recently" paid $1,800.77 to be applied to the restitution, which would result in Don Jacobs Toyota being paid in full. Id. at 2. The government indicated that normally it would oppose any effort to reduce a lawful restitution order, but it stated that in this case, it was taking no position given the defendant's long history of payments and his efforts to reach settlement with Acuity. Id. The government conceded that the situation was complicated by the fact that the restitution is joint and several with the co-defendant, and made a suggestion as to how the court could address that if it were inclined to grant the

defendant's request. Id. The government also provided the court with legal authority emphasizing the very limited ability of federal courts to modify sentences once imposed. Id. at 2-3.

The government attached to its response the defendant's history of payments toward the restitution, showing that between July of 2011 and March of 2021, the defendant had paid $27,948.62 in increments of anywhere from $100 to $1,000. Dkt. No. 100-1. The defendant started making payments at $100 a month, but by 2012 frequently was able to increase the payments to $200 or $300; starting in 2016, he consistently began to make payments of $250 per month. While there were times when he missed a month or two, it appears that the defendant would make up those payments and frequently would pay in excess of the monthly payment. Id.

The court agrees with the government that the defendant has made impressive efforts to pay the restitution over the past decade and commends the defendant for that. But there is no authority allowing a court to modify a restitution order or to "deem" it "satisfied." Section 3582(c) of Title 18 states that a court may not modify a term of imprisonment once it has been imposed except under a few very specific circumstances, none of which apply here—the defendant is not seeking compassionate release under §3582(c)(1) and the defendant has not argued that the sentencing guidelines have been lowered since his sentence was imposed. 18 U.S.C. §3582(c)(2).

At least seven circuits have held that a private settlement between a criminal defendant and his victim does not preclude the district court from imposing restitution for the underlying crime. See United States v. Cloud, 872 F.2d 846, 854 (9th Cir. 1989) ("We therefore conclude that, despite the existence of settlement agreements among the parties, the district court was

authorized by the [Victim Witness Protection Act] to order [the defendant] to pay restitution . . . ."); United States v. Hairston, 888 F.2d 1349, 1355 (11th Cir. 1989) (declining to find that dismissal with prejudice of the victim's civil lawsuit in state court precluded federal criminal restitution, holding that "[r]estitution is not a civil matter; it is a criminal penalty meant to have strong deterrent and rehabilitative effect."); United States v. Vetter, 895 F.2d 456, 459 (8th Cir. 1990) (agreeing with the Ninth Circuit's conclusion in Cloud that because victims did not have an independent enforceable right to receive restitution, victims could not waive such a right via a settlement agreement); United States v. Sheinbaum, 136 F.3d 443, 448 (5th Cir. 1998) ("That the victim has agreed in a civil proceeding that it has been compensated fully does not prevent a district court from pursuing the rehabilitative and retributive functions of the criminal law served by restitution."); United States v. Parsons, 141 F.3d. 386, 393 (1st Cir. 1998) ("[T]his court has already held that a release by the victim does not preclude or cap restitution of losses as part of criminal sentencing in a case where there is no double recovery" (citing United States v. Savoie, 985 F.2d 612, 619 (1st Cir. 1993)); United States v. Gallant, 537 F.2d 1202, 1250 (10th Cir. 2008) (finding that a private settlement cannot abrogate the language of the Mandatory Victim Restitution Act); United States v. May, 500 F. App'x 458, 462 (6th Cir. 2012) ("'[a] private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong" (quoting United States v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001)).

In United States v. Pappas, 409 F.3d 828 (7th Cir. 2005), the Seventh Circuit considered a circumstance in which the defendant acknowledged the

4

amount of restitution in the plea agreement, but argued at sentencing that he had entered into a civil settlement agreement with the victim in which the victim would release him from further civil liability in exchange for a lower amount. The district court imposed the restitution, minus the lower amount the defendant had paid to the victim under the terms of the settlement agreement, and the defendant appealed. Id. at 829.

The Seventh Circuit concluded that because the defendant had contractually obligated himself to pay the full amount of restitution in the plea agreement, the defendant had waived any challenge to the district court's imposition of restitution in that amount. Id. at 830. The court stated, "[a]lthough they may not have anticipated the civil settlement when entering into the plea agreement, both Pappas and the government assumed the risk of future changes in circumstances when they bound themselves in exchange for certain benefits." Id.

The settlement agreement between the defendant and Acuity may well resolve any civil liability between the defendant and Acuity. In other words, if Acuity ever were to try to recover the unpaid balance of the $38,686 from the defendant, the settlement agreement could thwart such an attempt. But the cases cited above, and the statutory restriction on sentence modification, mean that the settlement agreement cannot resolve the question of whether the defendant owes further restitution under Judge Clevert's July 22, 2011 amended judgment, or under the Mandatory Victim Protection Act. The defendant should receive credit against the restitution balance for any lump sum payment he makes. As to whether the U.S. Attorney's Office expends any further effort to collect the balance of the restitution, that is up to the U.S. Attorney's Office. But the court cannot grant the defendant's motion to modify

his sentence, despite the fact that it is clear he has tried very hard to pay it down and despite the fact that Acuity has agreed that in exchange for a lump sum payment, it will not seek to collect any further funds from him.

The court **DENIES** the defendant's letter motion to modify restitution. Dkt. No. 99.

Dated in Milwaukee, Wisconsin this 28th day of May, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**